UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD PETERSON,

        Plaintiff,                            Hon. Richard Alan Enslen

v.                                             Case No. 1:06-CV-447

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 43 years of age at the time of the ALJ's decision. (Tr. 19-20). He successfully completed high school and worked previously as a grocery clerk. (Tr. 64, 68, 81-85).

Plaintiff applied for benefits on September 16, 2005, alleging that he had been disabled since October 24, 2002, due to back and neck pain. (Tr. 45-48, 57). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 20-45). On October 24, 2005, Plaintiff appeared before ALJ Janice Bruning, with testimony being offered by Plaintiff and vocational expert, Karen Starr. (Tr. 408-31). In a written decision dated April 14, 2006, the ALJ determined that Plaintiff was not disabled. (Tr. 13-19). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On July 29, 1990, Plaintiff reported to the emergency room complaining of pain in his right shoulder. (Tr. 140). X-rays of Plaintiff's shoulder were "normal" with no evidence of fracture or dislocation. (Tr. 146). Plaintiff was diagnosed with a shoulder sprain. (Tr. 140).

On July 11, 2001, Plaintiff was involved in an automobile accident in which his vehicle was struck from behind. (Tr. 156). X-rays of Plaintiff's cervical spine, taken on July 13, 2001, revealed "slight" degenerative disc disease at C5-6. (Tr. 142). On August 5, 2001, Plaintiff participated in an MRI examination of his cervical spine, the results of which revealed "narrowing of the left side of the canal at C5-6." (Tr. 168).

On August 17, 2001, Plaintiff was examined by Dr. Yousif Hamati. (Tr. 157-58). Plaintiff reported that he was experiencing "constant" neck pain which he rated as 10 on a scale of 1-10. (Tr. 157). Plaintiff exhibited a "limited range" of neck motion. A neurological examination of his upper extremities was "within normal limits." *Id.* When examined on September 17, 2001, Plaintiff reported that he was "miserable." (Tr. 158). On October 17, 2001, Plaintiff underwent a discectomy at C5-6 with anterior cervical fusion performed by Dr. Hamati. (Tr. 159-60, 226-27). X-rays of Plaintiff's cervical spine, taken the next day, revealed "satisfactory post-op appearance to the cervical spine." (Tr. 166).

On October 30, 2001, Plaintiff reported that he was "doing great" with "no arm pain." (Tr. 231). Dr. Hamati reported that "x-rays look good and I am happy with the way he is coming along." On November 12, 2001, Plaintiff reported that he was "doing pretty well." X-rays of Plaintiff's neck, taken on December 11, 2001, revealed "excellent healing." *Id.*

X-rays of Plaintiff's cervical spine, taken on March 9, 2002, revealed "moderate" central canal stenosis at C5-6 and "severe" central canal stenosis at C6-7. (Tr. 188). There was also evidence of a "broad based disc bulge" at C6-7. *Id.*

On April 9, 2002, Dr. Hamati[1] reported that Plaintiff can perform work activities subject to the following restrictions: (1) no overhead work; and (2) no lifting more than 20 pounds. (Tr. 207).

On July 9, 2002, Plaintiff was examined by Dr. Hamati. (Tr. 367). Plaintiff reported that he was experiencing "major difficulty with his right shoulder." Impingement testing was positive and Plaintiff exhibited tenderness over the AC joint and limited shoulder flexion. *Id.*

On July 11, 2002, Plaintiff participated in an MRI examination of his right shoulder, the results of which revealed a "partial tear" of the supraspinatus tendon. (Tr. 187).

On July 25, 2002, Dr. Hamati reported that Plaintiff can perform work activities subject to the following restrictions: (1) no "above shoulder" work; and (2) he cannot work more than 8 hours daily. (Tr. 206).

On August 27, 2002, Dr. Hamati reported that Plaintiff could perform work activities so long as he not perform such for longer than 8 hours daily. (Tr. 204).

On October 28, 2002, Dr. Hamati reported that Plaintiff can perform work activities so long as he not perform repetitive walking, lifting, or bending. (Tr. 205). On October 29, 2002, Dr. Hamati reported that Plaintiff can perform work activities subject to the following restrictions: (1) no repetitive walking or bending; (2) no lifting more than 15 pounds; and (3) he cannot work more than 8 hours daily. (Tr. 203).

---

[1] As Defendant correctly notes, the various reports issued in Dr. Hamati's name regarding Plaintiff's ability to perform work activities do not appear to have been completed or signed by Dr. Hamati. However, such does not inexorably lead to the conclusion that the limitations identified in such reports were not articulated by Dr. Hamati. For example, it is certainly possible that Dr. Hamati simply directed a staff member to complete and sign the report as directed. In the absence of evidence to the contrary, the Court will consider such reports as originating with Dr. Hamati and evaluate them accordingly.

On October 31, 2002, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "moderate" narrowing of L5-S1 disc space as well as a "fairly small" herniation of the L5-S1 disc. (Tr. 186). There was also "mild" narrowing of the L1-2 and L4-5 disc spaces. The vertebral bodies revealed "a normal configuration, [with] no compression deformity or significant signal abnormality." *Id.*

In a report dated November 4, 2002, Dr. Hamati reported that Plaintiff was able to work an 8-hour day so long as he "avoid repetitive walking, lifting and bending." (Tr. 375).

On November 19, 2002, Plaintiff was examined by Dr. Hamati. (Tr. 366). Plaintiff reported that he was experiencing "more pain" in his neck and lower back. The doctor concluded that Plaintiff required arthroscopic surgery to repair his shoulder. *Id.* The doctor nonetheless reported that Plaintiff can perform work activities subject to the following restrictions: (1) no repetitive walking or bending; (2) no lifting more than 15 pounds; and (3) he cannot work more than 8 hours daily. (Tr. 202).

On January 24, 2003, Plaintiff underwent arthroscopic surgery to repair his right shoulder. (Tr. 376-77).

On February 3, 2003, Dr. Hamati reported that Plaintiff was "partial disabled" and could perform "l[ef]t hand/arm job only." (Tr. 189). Plaintiff is left-handed. (Tr. 411). The doctor instructed Plaintiff to participate in physical therapy. (Tr. 289, 366). On February 18, 2003, Plaintiff reported to Dr. Hamati that he was "doing good." (Tr. 365). The doctor indicated that Plaintiff could "increase his activities as tolerated." *Id.*

On March 3, 2003, Dr. Hamati reported that Plaintiff was "total disabled." (Tr. 200).

6

On March 28, 2003, Plaintiff reported to his physical therapist that he was experiencing "increased soreness" in his shoulder after "splitting wood for two hours." (Tr. 286-87). The physical therapist reported that Plaintiff was "making consistent gains in shoulder motion, strength and function" and was "doing much better." *Id.* An April 3, 2003 examination revealed that Plaintiff was exhibiting "acceptable" range of shoulder motion. (Tr. 365).

On April 14, 2003, Dr. Hamati reported that Plaintiff is "total disabled." (Tr. 221).

Plaintiff was discharged from physical therapy on April 25, 2003. (Tr. 285). On discharge Plaintiff rated his shoulder pain as 0 and 3 (on a scale of 1-10) at rest and with activity, respectively. Plaintiff exhibited 4/5 strength in his shoulder as well as only mildly limited range of movement. The therapist reported that Plaintiff was "doing well." *Id.*

On May 20, 2003, Dr. Hamati reported that Plaintiff can perform work activities subject to the following restrictions: (1) no bending or stooping; and (2) no lifting more than 15 pounds. (Tr. 199).

On July 15, 2003, Plaintiff was examined by Dr. Hamati. (Tr. 364). The results of a neurological examination were "within normal limits." *Id.* The doctor reported that Plaintiff can perform work activities subject to the following restrictions: (1) limited walking; (2) no bending or stooping; and (3) no lifting more than 15 pounds. (Tr. 220).

On August 1, 2003, Dr. Hamati reported that Plaintiff can perform work activities subject to the following restrictions: (1) limited walking; (2) no standing or stooping; (3) no lifting more than 15 pounds; (4) no working longer than 8 hour shifts; and (5) he must have a sit/stand option. (Tr. 219).

On August 14, 2003, Dr. Hamati reported that Plaintiff can perform work activities subject to the following restrictions: (1) he must have a "sit down" job; (2) no lifting more than 15 pounds; and (3) he cannot work more than 8 hours daily. (Tr. 218).

On September 2, 2003, Dr. Hamati reported that Plaintiff was unable to perform any work activities. (Tr. 216). On October 14, 2003, Dr. Hamati reported that Plaintiff is "total disabled." (Tr. 197).

On January 13, 2004, Plaintiff was examined by Dr. Hamati. (Tr. 363). Plaintiff reported that he was experiencing "a lot of neck pain and back pain," but that his "biggest problem" was his left shoulder. An examination of Plaintiff's shoulder revealed "instability." *Id.* The doctor concluded that Plaintiff was "totally disabled." (Tr. 373). The next day Dr. Hamati again reported that Plaintiff was "totally disabled." (Tr. 215).

On April 13, 2004, Dr. Hamati reported that Plaintiff was "totally disabled." (Tr. 372). On July 20, 2004, Dr. Hamati reported that Plaintiff was "totally disabled." (Tr. 370).

On October 26, 2004, Plaintiff was examined by Dr. Hamati. (Tr. 362). Plaintiff reported that he was experiencing "a lot of low back pain." *Id.* The doctor concluded that Plaintiff was "total disability." (Tr. 369).

On January 25, 2005, Plaintiff was examined by Dr. Hamati. (Tr. 361). Plaintiff reported that he was experiencing "a lot of back pain" as well as left hip pain. Plaintiff stated that "he dislocated that hip." X-rays of Plaintiff's hip were "negative" and an examination of Plaintiff's hip and back "did not show anything unusual." *Id.* The doctor recommended conservative treatment, yet concluded that Plaintiff was "total disability." (Tr. 361, 368).

On March 10, 2005, Dr. Hamati completed a report regarding Plaintiff's ability to perform work-related activities. (Tr. 403-06). The doctor reported that during an 8-hour workday Plaintiff can sit, stand, and walk for 30 minutes each and can sit/stand for one hour. (Tr. 403). The doctor reported that Plaintiff can occasionally lift/carry 10 pounds. *Id.* Dr. Hamati also reported that Plaintiff can occasionally bend, twist, squat, kneel, crouch, crawl, stoop, climb stairs, and reach above shoulder level. (Tr. 404).

On April 26, 2005, Plaintiff was examined by Dr. Hamati. (Tr. 361). Plaintiff reported that he was "having difficulty with his pelvis and his back." Plaintiff reported that "he is unable to do too much work." The doctor concluded that he "really [did not] have too much more to offer [Plaintiff] other than limited working activities." *Id.* The doctor concluded that Plaintiff was "totally disabled." (Tr. 371).

On July 26, 2005, Plaintiff was examined by Dr. Hamati. (Tr. 407). Plaintiff reported that he was experiencing "difficulties with his neck, shoulders, [and] back." The doctor reported that "neurologically, [Plaintiff] is intact." The doctor concluded that he did not have "too much more to offer [Plaintiff] at this stage other than conservative approach." *Id.*

At the administrative hearing Plaintiff testified that on a good day his neck pain rates a 6 (on a scale of 1-10) and on a bad day rates a 10. (Tr. 417). As for his lower back pain, Plaintiff reported that on a good day it rates a 7-8 and on a bad day rates a 10. *Id.* With respect to his right shoulder, Plaintiff testified that on a good day his pain rates a 5 and on a bad day rates a 10. (Tr. 418). Plaintiff reported that he experiences 12-20 bad days per month. (Tr. 417-18). Plaintiff reported that he can walk 100 yards on a good day and can stand for "maybe" 10 minutes. (Tr. 418). Plaintiff testified that he can sit for 30-40 minutes and lift "maybe" 10 pounds. (Tr. 419). Plaintiff

reported that during the day he takes 2-3 naps each of which lasts from one hour to two and one-half hours. (Tr. 420). Plaintiff also reported that he drives, cooks, shops, washes dishes, takes out the garbage, cares for his dog, and watches television. (Tr. 420-23).

## ANALYSIS OF THE ALJ'S DECISION

**A. Applicable Standards**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) degenerative changes in the lumbosacral spine with herniation of L5-S1 disc; (2) stenosis in the cervical spine and status-post C5-6 discectomy and anterior fusion at C5-6; (3) full thickness partial tear in the right shoulder and status-post arthroscopy and arthroscopic decompression; and (4) left shoulder pain. (Tr. 15). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 16). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 17-18). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v.*

11

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work activities subject to the following restrictions: (1) he can lift/carry less than 10 pounds frequently, but can only occasionally lift/carry 10 pounds; (2) he can stand/walk about 2 hours during an 8-hour workday with a sit/stand option at will and using an assistive device; (3) he can sit about 6 hours during an 8-hour workday with a sit/stand option at will; (4) he can never climb ladders, ropes, or scaffolding; (5) he can only occasionally balance, crouch, kneel, stoop, crawl, or climb ramps/stairs; (6) he can only occasionally reach overhead with both upper extremities; (7) he can reach in front constantly with his right upper extremity and frequently with his left upper extremity; (8) he can handle constantly with his right upper extremity and frequently with his left upper extremity; (9) he can finger and feel constantly with both upper extremities; (10) he must avoid concentrated exposure to extreme hot and cold; and (11) he can perform only 1-2 step tasks. (Tr. 16). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform

specific jobs" is needed to meet the burden.  *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding.  Such was the case here, as the ALJ questioned vocational expert Karen Starr.

The vocational expert testified that there existed approximately 5,400 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 427-29).  This represents a significant number of jobs.  *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

        a.    The ALJ Properly Evaluated the Medical Evidence

As noted above, Dr. Hamati on several occasions offered the opinion that Plaintiff was "total disabled."  Plaintiff asserts that because Dr. Hamati was his treating physician, the ALJ was obligated to afford controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such

13

opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. The ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

First, the determination of whether Plaintiff is disabled is a matter reserved for the Commissioner. 20 C.F.R. § 404.1527. Thus, the ALJ properly accorded no significance to the unsubstantiated statements by Dr. Hamati (unaccompanied by any specific limitations or restrictions) that Plaintiff was "disabled." To the extent that Dr. Hamati did on occasion articulate specific limitations imposed by Plaintiff's impairments, such limitations, with a single exception, were entirely consistent with the ALJ's RFC determination. (Tr. 199, 218-20).

The one exception is contained in Dr. Hamati's March 10, 2005 report in which he reported that during an 8-hour workday Plaintiff can sit, stand, and walk for only 30 minutes each and can sit/stand for only one hour. (Tr. 403). As the ALJ correctly observed, the doctor stated in this report that this limitation had been in effect since July 11, 2001. (Tr. 403). This conclusion is contradicted by Plaintiff's admission that he performed substantial gainful activity in 2002. (Tr. 413). It is further contradicted by the medical evidence and Plaintiff's reported activities, as well as several of Dr. Hamati's previous opinions on the subject.

For example, on March 28, 2003, Plaintiff reported that he had experienced "increased soreness" in his shoulder after "splitting wood for two hours." (Tr. 286-87). Despite this admission by Plaintiff that he was capable of performing such labor intensive activities, less than three weeks later, on April 14, 2003, Dr. Hamati reported that Plaintiff was "total disabled." (Tr. 221). Only eleven days later, however, Plaintiff exhibited 4/5 strength in his shoulder with only mildly limited range of movement. (Tr. 285). Plaintiff reported that he was "doing well" and rated his shoulder pain as 0 and 3 (on a scale of 1-10) at rest and with activity, respectively. *Id.*

As another example, on August 14, 2003, Dr. Hamati reported that Plaintiff can perform a "sit down" job work so long as he neither lifts more than 15 pounds nor works more than 8 hours daily. (Tr. 218). However, a little more than two weeks later, the doctor, without explanation, offered the opinion (unsupported by any medical findings) that Plaintiff was simply unable to perform any work activities. (Tr. 216). In sum, there exists substantial evidence to support the ALJ's decision to accord less than controlling weight to Dr. Hamati's opinion.

b.   The ALJ Properly Discounted Plaintiff's Subjective Allegations

Plaintiff asserts that his testimony regarding his pain and limitations demonstrates that he is disabled. The ALJ discounted Plaintiff's subjective allegations of pain and disability, however, concluding that Plaintiff's "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Tr. 17).

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a

claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)).  Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard.  *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record."  *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t

is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The Court does not dispute that Plaintiff suffers from severe impairments which impose upon him a certain degree of limitation. However, as the ALJ properly concluded, Plaintiff's subjective allegations of disabling pain and limitation are not supported by objective medical evidence. Moreover, as discussed above, Plaintiff's care providers have not imposed any credible limitations which are inconsistent with the ALJ's RFC determination. Plaintiff's subjective allegations are further contradicted by his reported activities. In sum, there exists substantial evidence to support the ALJ's credibility determination.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  August 15, 2007                                  /s/ Ellen S. Carmody
                                                       ELLEN S. CARMODY
                                                       United States Magistrate Judge